Our next case is Woodson v. Mlodzik, appeal number 22-3153. Mr. Bright, whenever you're ready. Good morning, and may it please the Court, my name is Benjamin Bright, and I'm appearing on behalf of the petitioner this morning. At Breion Woodson's sentencing, the state court imposed a significant sentence based on its identification of Mr. Woodson in a seven-minute video. The district court looked at the photos of Mr. Woodson that were included in his petition and expressed skepticism that he and the man in the video were the same person, but the court ultimately denied the petition because it thought that Mr. Woodson had procedurally defaulted any claim based on those photos. As we explained, this was a straightforward legal error. The court can get around that procedural default by applying the actual innocence exception, and once it does so, clear and convincing evidence establishes that the state court misidentified Mr. Woodson. Can we review the procedural default here, though? You can review the procedural default. How so? How so under 920, under 2254D? So it is well established that the actual innocence exception, which is couched within the miscarriage of justice exception, is an exception to 2254D. So this is a well-established, it's a demanding standard. Nevertheless, it is available, and it allows the court to consider a procedurally defaulted  But 2254D, the way I read it, applies only to claims that were adjudicated on the merits. The claim that you're making was not adjudicated on the merits. That's the claim that you're arguing is it was not adjudicated on the merits. So I'll push back a little bit on that because it was, his actual innocence was presented both to the state courts and to the district court. It wasn't couched in terms of the actual innocence claim, but he did maintain that he was actually innocent. So in that sense, it wasn't waived, it was adjudicated, and the Wisconsin state courts and the district court both ruled on whether or not he was actually innocent, whether or not he was the person who appears in this video. So in that context, I would say that there isn't a waiver here. We haven't waived that Mr. Woodson is actually innocent of appearing in this video. But to the legal point, it is certainly the case, and I would point the court to its own precedent in Mills v. Jordan, and to the Second Circuit's precedent in Spence, where the And it did so because in the context of the miscarriage of justice exception, that is what the purpose of the miscarriage of justice exception is there for, is to allow for the consideration of procedurally defaulted claims in order to prevent a fundamentally unjust incarceration. This would be an expansion, no doubt, of the actual innocence exception, right? I don't think it is an expansion of the actual innocence. Even if we go back to the Mills case, which has been at least called into question, but let's say Mills is right. Mills dealt with the Indiana habitual offender sentence, which under the reading of Mills or under the holding of Mills was an illegal sentence. Here there's nothing illegal about the sentence. In other words, you understand the distinction? I understand. The habitual offender doesn't apply, it's an illegal. Here he was sentenced within the statutory maximum for the offense in which he committed. There's nothing illegal about the sentence. That is correct. It's not illegal and this is not a habitual offender context. Do we have any analogous cases holding what you're asking us to do here? Yes. Spence is a case. Spence was not in the context of a habitual offender or a career offender context. It is good law of the Second Circuit and it applies in this context. So if we were of the Second Circuit case. So what case have we held? Mills is the closest case. Mills as you say is in the context. Mills is different. Mills is in the context of habitual offenders. Mills is different. But it is truly, it is only a marginal extension of existing doctrine to say that actual innocence of sentencing in a non-capital context applies not only to a habitual offender context but also to other contexts as well such as this one. It would apply to every context. It would apply to every legally imposed sentence. It would be a massive, I mean it would blow a hole. It would be no longer an exception, it would be a rule. So to that point, let me, if the court as I understand it is concerned about perhaps floodgate concerns, I would also just sort of direct you to Spence. Spence has been the law of the Second Circuit since. Yeah, I'm not concerned about floodgates. I'm not concerned about floodgates. I'm concerned more about the exception becomes the rule. It doesn't matter how many cases are brought. So I don't think the exception becomes the rule. So the actual innocence exception is an exceptionally demanding standard. What's the limiting principle? I mean his argument is it wasn't me in the video. It just wasn't me in the video. What would prevent another plaintiff from being the exact same plaintiff? Wasn't me. What limits other petitioners from making the same claim is that you have to come forward with new, reliable, compelling, objective evidence. Which he could have brought. The vast majority. But wait a minute. He either had the tattoo on his neck or he didn't, right? That's it. He could have brought this in state court times 10. He just decided to bring it in the habeas claim. So there's nothing new about this except that he brought it to the attention of the district court. Nothing new. That's correct. But it's also the law of the circuit in the Gomez-Vigiamet case that in the context of actual innocence, what is new evidence is just evidence that wasn't presented to the state court. So that means there is no longer an exception. You just get a re-sentencing in federal court. That is the law of the circuit. And what I'll say is that there is a limiting principle because the Supreme Court has expressed definitively that the actual innocence exception is exceptionally demanding. So it is very, very difficult to bring an actual innocence claim. So what would be the limit here? What would prevent your client? I'm not talking about winning the claim. I'm talking about bringing the claim. What would be the limit on your client bringing the claim? He could have brought the claim in state court. He didn't. His sentence was legal. It was legally imposed. You're just making an argument that the district court confused him with somebody else. What's the limit? I mean, the limit is that there has to be new evidence. There has to be new reliable evidence. The new evidence is evidence that wasn't presented to the state court. In this case, it's the pictures of the district. So you just get a re-sentencing. That's true. That's true. I'm trying to push you on what is new because there's nothing new about the neck tattoo. What's new about it in the context of the federal habeas proceeding is that it wasn't presented in the state. So it could be anything that wasn't presented in the state court proceeding. It could be anything that wasn't presented, but it has to be relevant, it has to be reliable, it has to be compelling. All of these requirements that are within the Schlepp standard that are difficult to meet and the vast majority of habeas petitioners are not going to be able to meet that standard. So it's an exceptionally difficult standard to meet. We think that the circumstances of this case are unusual because there is new objective evidence in the form of pictures that indicates by clear and convincing evidence that it is not him appearing in the video. And for that reason, so what I do want to point the court to is the court's reasoning in the Mills v. Jordan case where in that case the government also argued that the petitioner had procedurally defaulted the actual innocence claim. Even though the petitioner in that case had maintained that he was actually innocent without styling it as an actual innocence claim. And in that context, this court held that it was plausible that he had brought an actual innocence claim. And more to the point, the entire purpose, the court explained, of the miscarriage of justice exception is to prevent a fundamentally unjust incarceration. So in that context, it makes no sense to strictly apply the waiver rules because we need to have an outlet in order to have these claims considered by the court. Well, this is just a little bit different direction. Based on your argument here today, how do you get around 2254E2? 2254E2. So let me just tell you what it says. It says if the applicant has failed to develop the factual basis of claim in state court proceeding, the court shall not hold an evidentiary hearing on the claim unless the applicant shows the claim relies on a new constitutional law or a factual credit that could not have been previously disclosed to the exercise of due diligence. E2 is not an issue here because we're not asking for an evidentiary hearing. Yeah, but we've held that when a petitioner seeks to expand the record in the manner which you've done, the purpose is to achieve the same end as an evidentiary hearing. And the limits of 2254E2 apply. So based on your argument here today, how do you get around 2254E2? Well, I think the way to get around that is that we are bringing a claim in the context of actual innocence, which is a way of having a procedurally defaulted claim heard by a  So to the extent that E2 applies and it was procedurally defaulted, the court can still hear that claim because this evidence goes to its actual innocence of the act that gave rise to an enhanced sentence. I guess I'm still having trouble understanding how this is a claim, this is a new claim. The claim was presented in the state courts. The claim was presented, so... It's just new evidence that you're on. It's new, well, so the actual innocence claim, it wasn't styled as one in the district. Wait a minute, hang on. Are you claiming actual innocence is a freestanding constitutional claim? No, we are not. We are claiming it's a gateway. Okay, so the underlying claim is a due process and sentencing claim, right?  That was presented to the state courts. Correct. And they rejected it. Correct. So, slightly different question, but the district judge cited Cullen against Pinholster saying you're stuck with the record made in the state courts. Why is that not correct? It's not correct because we're in the posture, we're bringing an actual innocence claim. So, in that context, we can sidestep the Cullen... Sorry, I'm confused because we're not talking about a freestanding actual innocence claim. I mean, in Cullen against Pinholster, we're talking about whether somebody gets executed, right? Not just as a longer sentence, but whether they get executed. And the Supreme Court says no new evidence. The Supreme Court says no new... In Cullen, well, Cullen didn't concern an actual innocence claim. So, we're in a different procedural context. And the Supreme Court has also held, in cases like the Quiggin, that the actual innocence claim survived the enactment of AEDPA, the Anti-Terrorism Effective Death Penalty Act. And we're talking, just to be clear, you keep talking about an actual innocence claim. You're not talking about a freestanding claim. You're talking about an actual innocence exception to various procedural requirements, right? Yes. Okay. And you don't think Cullen applies to that? Well, it serves as a gateway to consider the underlying constitutional claim. So, if we are able to satisfy the gateway actual innocence showing under Schrupp and under Sawyer, then that allows us to consider the underlying due process claim and the right of Mr. Woodson to be sentenced on the basis of accurate information. So, that is the way to get around Cullen. And that is the legal error that the district court committed. Because, look, the district court said that it looked at the pictures from the Department of Corrections and said these two people do not appear to be the same person. But it said that it was limited because of the procedural bar under Cullen v. Penholster. However, because of the actual innocence claim, which serves as a gateway to consider the underlying constitutional claim, it can consider that evidence. So, what we urge the court to do is to find that that was a legal mistake under straightforward binding Seventh Circuit case law and then send it back down for a factual determination by the district court to determine whether or not it is, in fact, Mr. Woodson appearing in that video. All right, Mr. Bright. Thank you. Thank you. Okay, Ms. Weiss, whenever you're ready. Good morning. May it please the court. I'm Assistant Attorney General Sonia Weiss, and I represent the respondent in this matter. 2254D2 asks whether the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, as the questioning from the bench has expressed your concerns about that point. That is, I think, the dispositive point. The state court's factual determinations under 2254E1 are presumed correct, absent clear and convincing evidence that they're objectively unreasonable. And this circuit has held in Bailey v. Lemke that a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence. And also states in Morgan v. Hardy that petitioner has to show that a state court's determination was against the clear and convincing weight of the evidence. Of course, Cullen v. Penholster is sort of the linchpin of the respondent's argument, as it was the district court's ruling. I shouldn't say the linchpin of the district court's ruling. The district court's ruling was based on a close reading of the state court of appeals decision considering whether petitioner, Mr. Woodson, had shown by clear and convincing evidence that the sentencing court's factual determination was inaccurate. And Judge Griesbach, in a very careful decision, applied the law correctly and considered the fact of what the record in the state courts showed. And the respondent would ask that this court affirm the district court's decision. Okay. Thank you, Ms. Pines. What do you think the relevance of Cullen v. Penholster is for us? That federal review under 2254 D1 is limited to the record that was before the state court that adjudicated the claim on the merits. Here, that was the court of appeals, the state court of appeals, that adjudicated Mr. Woodson's claim on the merits. And the court of appeals and the district court reviewed that record when it made its determination. Thank you. Okay, thank you, Ms. Pines. Mr. Bright, would you like some rebuttal time? You don't have to. Okay, we'll give you a minute. So just to continue with our conversation from earlier, I do just want to emphasize that what we're asking for here is really quite narrow. It is really just a straightforward application of precedent, a correction of a legal error that was made by the district court, where the district court held that it couldn't consider the evidence, but it clearly can consider the evidence under the actual innocence exception. And once that correction is made, all the court has to do is remand this case to the district court to have that factual determination made in the first instance by the district court. We have put forward very, very, I submit, compelling evidence that Mr. Woodson is not the person who appeared in this video. And if that's the case, there is no question, and the government doesn't even really engage with this argument, but there is no question that the trial judge, in its sentencing, relied heavily on its identification of Mr. Woodson in the video. And it is fair to infer that it resulted in a sentence of multiple additional years, which is an unjust incarceration. It's something that this court should pay attention to because it's important that he be incarcerated just for the acts in which he actually committed. If there are no other questions, that's all. Thank you, Mr. Bright. Thank you so much. Thank you to you and your firm for taking this appointment. And the case will be taken under advisement. Our next case is...